UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 09 CR 0001 |
| vs. | ) | Judge William J. Hibbler |
| | ) | |
| MATTHEW CASEY | ) | |

## PLEA AGREEMENT

1.   This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant MATTHEW CASEY, and his attorney, ROBERT G. CLARKE, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.   The indictment in this case charges defendant with conspiring to commit bank robbery, in violation of Title 18, United States Code, Section 371 (Count One) and bank robbery, in violation of Title 18, United States Code, Sections 2113(a) and 2 (Count Two).

3.   Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4.   Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Charges to Which Defendant is Pleading Guilty

5.   By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Counts One and Two of the indictment. Count One charges defendant with conspiring to

commit bank robbery, in violation of Title 18, United States Code, Section 371. Count Two charges defendant with bank robbery, in violation of Title 18, United States Code, Sections 2113(a) and 2.

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charges contained in Counts One and Two of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

    a. With respect to Count One of the indictment: On or about January 2, 2009, at Oak Lawn and elsewhere, in the Northern District of Illinois, the defendant, along with co-defendants Benjamin J. Williams ("Williams") and Charles L. Lewis ("Lewis"), conspired with each other to, by intimidation, take from the person and presence of a bank employee, United States Currency belonging to and in the care, custody, control, management, and possession of TCF Bank, 9801 South Cicero, Oak Lawn, Illinois, the deposits of which were then insured by the Federal Deposit Insurance Corporation, in violation of Title 18 United States Code, Section 2113(a).

More specifically, a day or two prior to January 2, 2009, Williams, Lewis and the defendant discussed robbing an Oak Lawn, Illinois, bank. Then, on or about January 2, 2009, defendant and Lewis picked up Williams in Lewis' car. While Lewis drove the three men around, and prior to reaching the TCF Bank in Oak Lawn, Illinois, Williams dictated a demand note to the defendant, who wrote down words to the effect of, "all 100s, 50s, 20s,"

"no dye packs," and "thank you, have a nice day." The defendant acknowledges that the three men, also during the car ride, agreed to split the robbery proceeds. Defendant further acknowledges that, upon reaching the area near the Oak Lawn, Illinois TCF Bank, Lewis parked his car in the apartment complex across the street so that both he and the defendant could wait for Williams while Williams entered the TCF Bank in Oak Lawn, Illinois and demanded money from a bank teller. Williams, in fact, entered the TCF Bank, handed the teller the demand note written by the defendant, and obtained United States Currency belonging to the bank. Williams then returned to the car, and the three defendants left. The defendant and his co-defendants then split the proceeds of the robbery.

*Over Acts*

The defendant, in furtherance of, and to effect the objects of, the conspiracy, did commit, and cause to be committed, among others, the following overt act: On or about January 2, 2009, the defendant wrote a demand note used by Williams during the bank robbery.

      b.    With respect to Count Two of the indictment: On or about January 2, 2009, at Oak Lawn, in the Northern District of Illinois, Eastern Division, defendants Williams, Lewis and Casey, by intimidation, did take, from the person and presence of a bank employee, United States Currency belonging to and in the care, custody, control, management, and possession of TCF Bank, 9801 South Cicero, Oak Lawn, Illinois, the deposits of which were then insured by the Federal Deposit Insurance Corporation.

More specifically, on or about January 2, 2009, the defendant acknowledges he and co-defendant Lewis picked up co-defendant Williams and drove to Oak Lawn for the purpose of robbing a bank. While en route, co-defendant Williams dictated a demand note, which defendant wrote. Once they arrived at the bank, Williams entered the TCF Bank located at 9801 South Cicero in Oak Lawn while defendant and co-defendant Lewis waited in a parking lot. The defendant further acknowledges that Williams entered the bank, approached the teller counter, and displayed a bank robbery demand noted written by the defendant that contained words to the effect of, "all 100s, 50s, 20s," "no dye packs," and "thank you, have a nice day." The defendant further acknowledges that the bank teller removed, according to the bank's audit, approximately $2,750 in United States Currency from the teller drawer and placed it upon the counter, at which point Williams removed the money from the teller counter, exited the bank, and entered the getaway car being driven by Lewis and containing the defendant. Defendant further acknowledges that approximately $1,998 in United States Currency was recovered from the defendants at the time they were taken into custody.

The defendant further acknowledges that the deposits of the TCF Bank in Oak Lawn, Illinois, were insured by the Federal Deposit Insurance Corporation at the time of the robbery.

7. The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a

4

complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct.

## Maximum Statutory Penalties

8. Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

    a. Count One carries a maximum sentence of 5 years' imprisonment. Count One also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that with respect to Count One the judge also may impose a term of supervised release of not more than three years.

    b. Count Two carries a maximum sentence of 20 years' imprisonment. Count Two also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that with respect to Count Two, the judge also may impose a term of supervised release of not more than three years.

    c. Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

    d. In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty or restitution imposed.

e. Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 25 years' imprisonment. In addition, defendant is subject to a total maximum fine of $500,000, or twice the gross gain or gross loss resulting from the offenses of conviction, whichever is greater, a period of supervised release, and special assessments totaling $200, in addition to any restitution ordered by the Court.

## Sentencing Guidelines Calculations

9. Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

    a. **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2008 Guidelines Manual.

    b. **Offense Level Calculations.**

        i. With respect to Count One of the indictment, the base offense level, pursuant to Guideline §§ 2X1.1(a) and 2B3.1(a), is 20. The offense level is increased

6

2 levels, pursuant to Guideline § 2B3.1(b)(1), because the property of a financial institution was taken.

    ii.  With respect to Count Two of the indictment, the base offense level, pursuant to Guideline § 2B3.1(a), is 20. The offense level is increased 2 levels, pursuant to Guideline § 2B3.1(b)(1), because the property of a financial institution was taken.

    iii.  Pursuant to Guideline § 3D1.2(b), Counts One and Two should be treated as a single group because the counts involve the same victim and acts that are connected by a common criminal objective and constitute part of a common scheme or plan.

    iv.  Pursuant to Guideline § 3D1.3(a), the offense level applicable to the Group is the offense level for the most serious of the counts comprising the Group. For purposes of this Plea Agreement, the offense levels for Count One and Count Two are the same. Thus, the offense level for the group is 22.

    v.  Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

7

vi.  In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.  **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 7 and defendant's criminal history category is IV:

i.  On or about July 30, 2006, defendant was convicted of robbery in the Circuit Court of Cook County, Illinois, and sentenced to 6 months' imprisonment and 2 years' probation. On or about April 23, 2007, defendant's probation resulting from the July 30, 2006 conviction was revoked and he was sentenced to three years' imprisonment. Pursuant to Guideline §§ 4A1.1(a) and 4A1.2(k)(1), this conviction results in three criminal history points.

ii.  On or about July 13, 2006, defendant was convicted of criminal defacing of property in the Circuit Court of Cook County, Illinois, and sentenced to six months' supervised release. On or about August 23, 2006, defendant's supervised release

8

resulting from the July 13, 2006 conviction was revoked and he was sentenced to 30 days' imprisonment. Pursuant to Guideline §§ 4A1.1(c) and 4A1.2(k)(1), this conviction results in one criminal history point.

      iii.    Pursuant to Guideline § 4A1.1(d), defendant receives two criminal history points because the defendant committed the instant offenses while under a criminal justice sentence, namely, parole relating to that offense discussed above in paragraph 9(c)(i).

      iv.    Pursuant to Guideline § 4A1.1(e), defendant receives one criminal history point because the defendant committed the instant offense less than two years after release from imprisonment on the sentence discussed above in paragraph 9(c)(i).

    d.    **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 19, which, when combined with the anticipated criminal history category of IV, results in an anticipated advisory Sentencing Guidelines range of 46 to 57 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

    e.    Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation

9

Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

    f. Both parties expressly acknowledge that this plea agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

  11. The government agrees to recommend that sentence be imposed within the applicable guidelines range.

  12. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the

10

sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13. Regarding restitution, the parties acknowledge that restitution is owed to TCF Bank and that pursuant to Title 18, United States Code, § 3663A, the Court must order defendant, together with any jointly liable co-defendants, to make full restitution in an amount to be determined at sentencing. Restitution shall be due immediately upon sentencing, and paid pursuant to a schedule to be set by the Court at sentencing.

14. Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

### Presentence Investigation Report/Post-Sentence Supervision

15. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

16. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the

11

probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

17. For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

18. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 09 CR 0001.

19. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

20. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a. **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

        i. The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

        ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where

actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

    iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

    iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

    v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

    vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could

require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

                vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

        b.    **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 10 days of the entry of the judgment of conviction.

        c.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Other Terms

21.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

## Conclusion

22. Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

23. Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

24. Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

25. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

26. Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 8/19/2009

PATRICK J. FITZGERALD
United States Attorney

MATTHEW CASEY
Defendant

ERIKA L. CSICSILA
Assistant U.S. Attorney

ROBERT G. CLARKE
Attorney for Defendant

17